Ballentine and Wife *v.* Wright.

---

W. F. BALLENTINE AND WIFE *v.* A. WRIGHT *et al.*

WILLS. *Construction.* The testator made a will devising his estate, real and personal, to his brother's children, with directions to his executors to sell the realty and out of the proceeds of sale to settle $5,000 to the separate use of a married woman. Five years afterwards, he executed an amended will or codicil, recognizing his previous will, and saying that his wish was "so to change the same" as to give one of his executors, naming him, $1,000 out of moneys received from the sale of two designated lots, at the same time expressing the wish that the lots should be sold for a specified sum, far beyond their value, and if this could not be done, or some other very advantageous arrangement effected, that the executor named should receive from the rents of the lots, after the payment of taxes, $200 each year until he received $1,000, "and then pass the property over to the respective owners," the sum of $500 to be paid to another legatee out of the same rents in the same way, and the residue of the rents to testator's brother. *Held,* that the lots mentioned, although the estate had in the meantime been reduced to these lots, were subject to the power of sale of the original will coupled with the trust in favor of the married woman, and that the court would enforce the sale for her benefit.

---

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

METCALF & WALKER and G. W. GORDON for complainants.

L. LEATHERMAN, WRIGHT & FOLKES and T. B. EDGINGTON for defendants.

COOPER, J., delivered the opinion of the court.

On July 25, 1873, D. M. Leatherman died, leaving a will executed March 18, 1868, and an amended will

or codicil dated April 13, 1873, both of which were proved and admitted to record after his death. This bill was filed January 29, 1877, by Ballentine and wife, as legatees under the will in right of the wife, against the executors and other devisees and legatees for the execution of the will, and to recover the legacy claimed. The chancellor dismissed the bill on final hearing, and the complainants appealed.

Omitting immaterial matters, the will contains the following general provisions: "I hereby will and give to the children of my brother, Jefferson M. Leatherman, all of my real estate and personal property, money on hand or on deposit, choses in action, notes, bonds and all or every thing due and owing to me, to be held in trust by their father, or, in case of his death, by his eldest son or whoever he may appoint, until the children shall become of age, to-wit." Then follows an enumeration of the testator's property, real and personal, including two houses and lots on Madison and Third streets in Memphis. "All of which," the testator adds, "I will to be kept by their father, or such trustee as he may appoint, until the youngest child arrives of age. All of my before-mentioned real estate, I desire my executors to sell as soon as they deem it advisable, upon such terms as will most effectually carry out the object and intentions of this will, and out of the proceeds of said sale, I desire my said executors to settle and bestow upon Mrs. Sarah Ballentine, wife of William F. Ballentine, the sum of $5,000, the same to be to her sole and separate use, to dispose of as she may see proper."

The will, in substance, gives to the children of the testator's brother his entire estate, real and personal, with direction to the executors to sell the real estate, "as soon as they deem it advisable," and out of the proceeds of said sale to settle to the separate use of Mrs. Ballentine $5,000. The power of sale is coupled with a trust in favor of this legatee, not a mere discretionary power, and will be executed by the court: *Robertson* v. *Gaines*, 2 Hum., 367; *Brown* v. *Higgs*, 8 Ves., 574; *Godolphin* v. *Godolphin*, 1 Ves., 23. The legacy to Mrs. Ballentine is not a general legacy, but in the nature of a specific legacy, being payable out of a particular fund, and is of a class of legacies usually denominated demonstrative legacies: *Darden* v. *Hatcher*, 1 Cold., 513, 516; *Milly* v. *Harrison*, 7 Cold., 191, 201. Upon the will, the right of the complainants to relief would be clear.

In what he calls his "amended will," the testator expressly annuls all other wills except the one probated, and says: "My wish and will in this amendment to the will alluded to is to so change the same as to will and give Luke E. Wright, as my friend and executor, one thousand dollars out of moneys received from the sale of the two houses belonging to me on the corner of Madison and Third streets in the city of Memphis, the same described and mentioned in the will alluded to in this. It is my wish and desire that these two houses on Madison street be, if possible, sold for the sum that they were sold for in 1866 to H. A. Montgomery and afterwards by him to the Gayoso Savings Institute or Bank, being one hun-

dred thousand dollars, payable in ten annual payments, ten thousand dollars in cash, and the balance in nine years in yearly payments of ten thousand dollars per year, with simple interest. If this cannot be done, or some very advantageous arrangement [made], then and in that case, I desire and will that Luke Wright, my executor, receive and retain, after all tax each and every year is paid, from the rents each year two hundred dollars until a thousand dollars is paid, or until he receives that sum, and then pass the property over to the respective on's. Also in the same manner and way, it is my will and wish that little Sallie Keeling, an orphan child now at school at Covington, Tennessee, receive five hundred dollars; the balance of the rents thus not used, I desire and will the same sent to my brother, J. M. Leatherman, Murfreesboro, after paying my bill for medical attendance fully to Dr. Brown."

This amended will recognizes and republishes the previous will, and so changes it as is specially provided. The general object of the testator is, perhaps, clear. If the sale of the two houses and lots on Madison and Third streets can be made for $100,000, or upon other advantageous terms, they are to be sold under the power contained in the original will. If not, he wishes that those lots be rented for five years, the rents to be applied annually, after the payment of taxes, to Luke E. Wright $200, Sallie Keeling $100, and the residue, after paying Dr. Brown his medical bill, to go to his brother, J. M. Leatherman. At the expiration of the five years, or the period neces-

sary to accomplish these objects, the power of sale coupled with the trust in favor of Mrs. Ballentine of the original will would revive, unless a different disposition of this particular realty is made by the amended will. The words of the amended will are: "And then pass the property over to the respective on's." The last word is treated by both sides as an abridgment of the word "owners." In that view, the word could only mean the children of the testator's brother to whom the testator's entire estate, real and personal, is expressly devised and bequeathed by the will. The real estate devised is, however, subject to the power of sale conferred upon the executors, and to the payment of the legacy to the complainant out of the proceeds of sale. The question remains, therefore, whether the suspension of the sale of the Madison street lots, if a sale at $100,000 or "some very advantageous arrangement" could not be effected, was to continue for only five years, or be perpetual. If the suspension be only temporary, the complainants would be entitled, at the expiration of the time, to a sale and their legacy. If permanent, the legacy of the complainants could only be claimed out of the proceeds of the other realty, if any. The point is a nice one, and not free from difficulty.

In this strait, recourse has been had by the defendants to the introduction of oral proof to show a change in the pecuniary condition of the testator between the dates of the original and amended wills. And, undoubtedly, the parties have the right to introduce testimony to show the circumstances under which

the wills were made, for the purpose of enabling the court to occupy the stand-point of the testator at the time, and be thereby the better able to apply his words. It appears that the testator, after making the original will, had sold one of his most valuable pieces of realty and spent the proceeds, together with much of his moneyed effects. It also appears that other realty treated as valuable in his will had been encumbered to its value, or, like the lands in Arkansaw, lost by tax sales, or become worthless. The estate seems to be now reduced, as it probably was at the date of the amended will, to the Madison street lots. These lots were not worth, it seems, at that date, more than one-half the price put upon them by the testator, and have since greatly depreciated in value.

It is argued, on the one side, that these facts explain why the testator should wish to secure this property to his brother's children; and, on the other side, that if the knowledge of these facts would have influenced the testator to change his original intent, he would have expressed the change in language admitting of no doubt. The testimony is, it must be admitted, in the nature of a two-edged sword, and, after all, our only safe guide is the testator's own language.

By that language he so changes his original will as to give Luke E. Wright $1,000 "out of the moneys" to be received from the sale of the Madison street realty, thus recognizing the authority to sell conferred by the original will. He then expresses a wish as to the terms of sale, and, if these terms or "some very advantageous arrangement" cannot be effected,

that the property should be rented out until the legacy to Wright, and other charges named, are paid out of the rents.    The power to sell is not otherwise interfered with, nor is the suspension for an advantageous sale longer continued.    The power, coupled with the trust in favor of complainants, revived as soon as the charges in favor of Wright and Keeling were paid.

The chancellor's decree will be reversed, and a decree entered in accordance with this opinion, and the case will be remanded for its execution, and for all proper accounts.    The defendants will pay all the costs, which, however, will be allowed as a charge on the assets of the estate.

The complainants' legacy will bear interest from the time the sale of the property should have been made, which was at the end of five years from the testator's death.